FIFTH DIVISION

 September 15, 2000

No. 1-99-3550

ARTHUR TAYLOR, ) Appeal from the

) Circuit Court of

Plaintiff-Appellant, ) Cook County

)

) No. 98 CH 9967

)

COOK COUNTY SHERIFF'S MERIT ) Honorable

BOARD and MICHAEL F. SHEAHAN, ) Dorothy Kinnaird,

SHERIFF of COOK COUNTY, ) Judge Presiding.

)

Defendants-Appellees. )

JUSTICE GREIMAN delivered the opinion of the court:

Defendant Sheriff Michael Sheahan charged plaintiff Arthur Taylor (Taylor) with a violation of the rules and regulations of the Cook County Department of Corrections (DOC) and sought his dismissal as an officer with the DOC.  The complaint was filed with the defendant Cook County Sheriff's Merit Board (Board), which conducted a hearing regarding the matter.  At the hearing's close, the Board issued an order finding cause for separation.  Taylor then brought this action for administrative review following his decertification, and the circuit court affirmed the Board's ruling.  For the reasons that follow, we reverse the decisions of the Board and of the circuit court and remand to the Board for further proceedings.

The Cook County sheriff's complaint alleged that Taylor: (1) submitted and certified four separate employment applications containing false answers concerning his criminal background history; (2) violated General Order 4.1, paragraph III, section A-18, prohibiting the making of a false official report; and (3) violated Article X, paragraph B, section 3, of the Board's rules and regulations prohibiting the violation of general orders.  

In short, the sheriff charged Taylor with "making a false official report" on the basis that he filed four separate employment applications with the sheriff's office that all supplied false or misleading information regarding his criminal history.  Apparently, the sheriff construed these employment applications as "official reports" and thus concluded that Taylor's submissions constituted the making of a false official report.  For reasons not apparent from the record, the Board chose not to charge Taylor with Article X, paragraph B, section 5, of the rules and regulations, which empowers the Board to discipline officers who "have provided false or misleading information during the hiring process."   

On April 9, 1987, plaintiff filed his first employment application with the sheriff's office.  One of the questions inquired whether the applicant had ever been convicted of anything other than a minor traffic violation.  In response, Taylor answered "No."  At the end of the application, Taylor signed his name and certified that the contents of the application were true.  However, about a year later, in a letter dated February 26, 1988, Taylor revealed to the Board the existence of a conviction for resisting arrest and obstructing a police officer, for which he was sentenced to one year of nonreporting probation.  This letter did not coincide with the filing of an employment application.  It is undisputed that on December 5, 1983, plaintiff pled guilty to this criminal offense.

 On September 1, 1989, plaintiff again submitted an employment application with the sheriff's office, and this time he did not respond to the same question regarding previous convictions.  Taylor was hired as a Cook County correctional officer that same month.  A few months after having been hired, Taylor resigned and took a job with the Illinois State Police.

On December 28, 1990, after resigning from the Illinois State Police, plaintiff submitted another employment application with the Cook County sheriff's office, seeking to be rehired.  In this application, he again represented that he had never been convicted of a crime.  This application also included plaintiff's signature and a certification that the contents of the application were true.

Finally, on January 2, 1991, plaintiff submitted a fourth employment application, which he again signed and certified, and again represented that he had never been convicted of a crime.  Plaintiff was subsequently hired and began his second job with the DOC on January 2, 1991. 

On April 29, 1998, at the hearing before the Board, Taylor claimed that in 1987 he spoke to a Mr. James Hogan from the Board about filling out the employment application.  Taylor testified that he told Mr. Hogan about his 1983 conviction and that Mr. Hogan told him to mark "No" on the application, indicating that he had never been convicted of a crime other than a traffic offense.   He also testified that when he filled out the January 2, 1991, application, he spoke to an unknown female clerk at the sheriff's office who gave him the employment application.  She too advised him to answer the question regarding criminal history with a "No."  Aside from these two individuals, no one else gave him the advice to answer "No" on the applications.

After the hearing, the Board found that Taylor "made a false report" regarding his criminal history in his employment application.  Based on those findings, the Board entered an order on June 23, 1998, that plaintiff be terminated from his employment effective July 31, 1997.  Taylor then challenged the Board's decision in the circuit court of Cook County.  On April 27, 1999, the trial court affirmed the decision of the Board and entered an order that the decision of the Board was not against the manifest weight of the evidence, that Taylor made a false report, and that there was sufficient cause for discharge.  The trial court then denied plaintiff's post-

judgment motion, and plaintiff now appeals.

Under 
Dwyer v. Police Board
, 31 Ill. App. 3d 246, 249 (1975), plaintiff asserts that the term "official report" has a specific meaning, which is that it relates to an officer's "official duties" as that term is used in the sense of obligations ordinarily associated with police work.  Plaintiff's first contention is that his conduct of denying and omitting his conviction on his employment application was not and did not involve a matter related to his official duties as a correctional officer, as he was not employed by the sheriff at the time he engaged in such conduct.  Because Taylor had no "official duties" at the time of his application, he reasons that it would be impossible for him to produce an "official report." Although not enacted by the same administrative body, the pertinent Chicago police board's rule that was allegedly violated in 
Dwyer
 was "Making a false report, written or oral."  
Dwyer
, 31 Ill. App. 3d at 247.  There, this court found that an officer's refusal to answer a grand jury question concerning "who his employer was" and a subsequent internal affairs inquiry regarding that refusal did not relate to the officer's official duties, and therefore, such answers could not constitute an official report.  
Dwyer
, 31 Ill. App. 3d at 249. 

Plaintiff also points to this court's examination of that rule in 
Noro v. Police Board
, 47 Ill. App. 3d 872 (1977).  There, before a grand jury, an officer was asked whether "he was a Chicago police officer," and he refused to answer.  
Noro
, 47 Ill. App. 3d at 874.  Later, his superiors asked him if he had refused to answer questions relating to his conduct as a police officer.  The court found that when he answered "No," he gave a false answer that fell within the ambit of "making a false report" because it was an attempt to mislead his superiors concerning his duties as an officer.  
Noro
, 31 Ill. App. 3d at 877.  The court found the facts in 
Noro
 inapposite to 
Dwyer
, as the officer in 
Dwyer
 was only asked if he would answer a question as to "who his employer was," as opposed to "if he was a Chicago police officer."  
Noro
, 31 Ill. App. 3d at 877.  By comparison, Taylor claims that filling out an employment application is not a task or obligation associated with police work and, furthermore, that it is not a report to a superior officer about one's conduct as an officer.  However, he concedes that if he had offered deceptive answers to his superiors 
after
 he had been appointed, that would have been a violation of the rule as interpreted by 
Noro
. 

On this point, Taylor cites two additional cases that help chalk out this court's definition of "official report."  In 
Shallow v. Police Board
, 95 Ill. App. 3d 901 (1981), where an officer's dismissal was sought for "making a false report, written or oral," the Board's determination that a false report had been made was rejected where a false statement was not made on an official report, where the oral statement was a denial, and where the report was never admitted into evidence.  
Shallow
, 95 Ill. App. 3d at 909.  Similarly, plaintiff notes, in 
Phillips v. Civil Service Commission
, 172 Ill. App. 3d 278 (1988), a social worker was charged with falsifying her reports concerning her official duties where the evidence indicated that the employee had prepared reports for which there were no contemporaneous notes or investigative reports.  
Phillips
, 172 Ill. App. 3d at 287.  Taylor emphasizes that, unlike the present case, Phillips actually made a report concerning a matter for which she actually had a duty to report, and the contents of that report were found to be false. 

In response, defendants agree that an official report must relate to an officer's "official duties," as that term is used in the sense of obligations ordinarily associated with police work.  However, they also assert that because plaintiff has not supplied any case law which shows that an employment application is 
not
 an official report, it is equally as reasonable that the application is the first obligation of every active police officer in that it commences the employer/employee relationship.  Because its sole purpose is to begin an official relationship, defendants claim, it falls under the category of official reports.

Defendants bolster their view by supplying the dictionary definition of the word "official."  According to Webster's II New College Dictionary, page 760 (1995), the word "official" is defined as "of or relating to an office or post of authority."  Using this definition, defendants argue, an employment application easily falls within the category of official report.  Consequently, defendants conclude that plaintiff has failed to demonstrate that as a matter of law and fact all reasonable and unbiased persons, acting within the limits prescribed by law and drawing all inferences in support of the finding that an employment application is an official report governed by the general order, would agree that the finding is erroneous and that the opposite conclusion is clearly evident.

Initially, we note that the parties disagree as to the appropriate standard of review to be employed by this court.  In 
Leonard v. Department of Employment Security
, 311 Ill. App. 3d 354 (1999), this court confronted a similar dispute:

"Judicial review of the Board's decisions extends to all questions of law and fact presented by the record.  735 ILCS 5/3-110 (West 1998).  The Board's factual findings are considered 
prima facie
 true and correct, and a reviewing court may set aside such decisions only if they are contrary to the manifest weight of the evidence.  
Jones v. Department of Employment Security
, 276 Ill. App. 3d 281, 657 N.E. 2d 1141 (1995).  Questions of law, however, are subject to 
de novo
 review.  
City of Belvidere v. Illinois State Labor Relations Board
, 181 Ill. 2d 191, 692 N.E. 2d 295 (1998)."  
Leonard
, 311 Ill. App. 3d at 356.  

 On the one hand, Taylor's analysis suggests that the Board's determination that the employment application is an "official report" is one of law and, as such, is subject to a 
de novo
 review.  This is evident from his references to comparable cases where this court has made its own determination of what does or what does not constitute an "official report."  Appellees, however, suggest that this determination is actually a finding of fact, which is considered 
prima facie 
true and correct (735 ILCS 5/3-110 (West 1998)) and may only be set aside if it is contrary to the manifest weight of the evidence.  Given that, appellees maintain that the Board's decision may only be reversed if the opposite conclusion is clearly evident.  
O'Boyle v. Personnel Board
, 119 Ill. App. 3d 648, 653 (1983).

"Generally, courts give a great deal of deference to an agency's interpretation of a statute which it is charged with administering [citations].  However, an agency's interpretation is not binding and will be rejected if erroneous [citations]."  
Denton v. Civil Service Commission
, 277 Ill. App. 3d 770, 774 (1996).  "The deference accorded to an administrative agency's findings of fact is not accorded to its conclusions of law, including the erroneous construction of a statute or the legal effect of factual findings.  
Boaden v. Department of Law Enforcement,
 267 Ill. App. 3d 645, 649, 642 N.E. 2d 1330, 1333 (1994).  The legal effect of undisputed facts is a question of law, and the appellate court considers the propriety of the determination 
de novo
.  
Fitzpatrick v. Human Rights Comm'n
, 267 Ill. App. 3d 386, 392, 642 N.E. 2d 486, 491 (1994)."  
Bridgestone/Firestone, Inc. v. Doherty
, 305 Ill. App. 3d 141, 147 (1999).  

We are all quite familiar with the meaning and usage of the term "employment application," and clearly, there is no dispute that Taylor's submissions factually constitute employment applications.  However, the issue of whether those applications comprise official reports is a legal one, where that determination gives effect to how those applications may be legally construed.  As a result, we find that the proper standard of review is 
de novo
.

We are convinced by Taylor's argument and the lack of persuasive evidence to the contrary that the Board's finding was erroneous.  Both parties agree on the meaning of the word "official" as relating to the duties of an office or post of authority.  Furthermore, the term "employment application" has a meaning so easily understandable as not to be confused with an "official report," as it bears no relation to the duties of an officer or one in a post of authority.  Rather, it bears all of its relation to the actions of a civilian seeking employment with the office or post of authority in question.  Accordingly, we find that Taylor's employment application is not an "official report" and, therefore, that the Board was incorrect in finding him liable for violating General Order 4.1, paragraph III, section A-18.

Based on our finding that the Board carried out its charges under an incorrect provision, we need not consider the applicability of any additional issues.  While it is undisputed that Taylor did provide incorrect answers on his employment applications, the Board charged him with a violation of General Order 4.1, paragraph III, section A-18, which prohibits "making a false official report, oral or written."  This conclusion also nullifies the Article X, paragraph B, section 3, charge.  That section provides that "No * * * Correctional Officer * * * shall violate any of the general orders, special orders, directives, or rules and regulations of the Cook County Sheriff's Office."  Obviously, given our finding that an employment application is not an official report and that Taylor could not have violated General Order 4.1, he cannot be liable for violating a general order that prohibits the making of a false report (Article X, paragraph B, section 3).  As we previously indicated, the record does not disclose why the Board chose not to charge Taylor with Article X, paragraph B, section 5, of the rules and regulations, which empowers the Board to discipline officers who "have provided false or misleading information during the hiring process."  However, we note that nothing in this opinion should be construed to be a holding that the Board is precluded from proceeding against Taylor on remand under the correct charging provision.

For the foregoing reasons, we reverse the decisions of the trial court and the Board, and remand this cause to the Board for proceedings not inconsistent with this order. 

Reversed and remanded.

QUINN, P.J., and THEIS, J., concur.